[Sac. No. 489.    Department One.—October 30, 1899.]

JOSEPH LA MARCHE, Appellant, v. NEW YORK LIFE
INSURANCE COMPANY, Respondent.

LIFE INSURANCE—FRAUD OF AGENT—RETURN OF POLICY—ACTION FOR
DAMAGES—ERRONEOUS NONSUIT.—One who was defrauded into giv-
ing his note for the first premium, upon a policy of life insur-
ance, by the misrepresentations of the agent of the insurance
company as to the conditions of the policy to be issued, and who
was compelled to pay the note to an innocent holder, notwith-
standing a prompt return of the policy, and demand of return
of the note, may maintain an action for the recovery of dam-
ages for the fraud; and, where the evidence showed a fraud of
the agent for which the company was responsible, it was error
to grant a nonsuit in such action.

ID.—FRAUD IN SECURING APPLICATION—FILLING SIGNED BLANK—AUTHOR-
ITY OF AGENT.—An agent of a life insurance company authorized
to negotiate applications for policies, who made fraudulent mis-
representations to an applicant not proficient in the English
language as to what would be the conditions of a policy to be
issued under a blank application, which he induced the appli-
cant to sign, without knowledge of the meaning of the terms
used, acted, in filling up the blank application, not as the agent
of the applicant, but within the scope of his authority as agent
of the company; and the fraud thereby practiced by the agent
to the injury of the applicant must be treated as the fraud of
the company.

ID.—VALIDITY OF SIGNED BLANK—AUTHORITY FROM APPLICANT—ORAL
AGREEMENT.—A signed blank is not an application before it is filled;
and an agent of the insurance company who fills a blank which
an applicant has signed, can have no authority from the appli-
cant to insert in the form any proposal different from the oral
agreement made between them; and if different proposals there-
from are inserted, the instrument is not the application of the
party who signed the blank.

ID.—PROVISION AS TO UNWRITTEN STATEMENTS BY AGENT.—The applica-
tion, as completed by the agent, having been fraudulently ob-
tained from the applicant, the insurance company can derive no
advantage from a stipulation therein that the company should
not be affected by unwritten statements or promises made by
the agent, of which stipulation the applicant had no knowledge,
and which was fraudulently procured.

ID.—FAILURE TO READ APPLICATION—NEGLIGENCE.—Upon the facts ap-
pearing in this case, the applicant was not chargeable with neg-
ligence in failing to read the application either before or after
the agent filled the blanks therein.

ID.—RETURN OF POLICY—CONSENT OF BENEFICIARY NOT REQUIRED.—The
fact that the wife of the applicant, who was named as bene-

ficiary in the policy, did not join in the offer to surrender it, does not affect the applicant's right of action for the fraud practiced upon him.  Having never applied for the policy which the company assumed to issue, and which he did not accept nor agree to accept, his wife had no interest therein.

APPEAL from a judgment of the Superior Court of Tulare County and from an order denying a new trial. ,Wheaton A. Gray, Judge.

The facts are stated in the opinion.

E. W. Holland, and F. L. Alford, for Appellant.

No contract existed for the policy, which was never accepted; and the wife of La Marche had no interest to restore. (Bishop on Contracts, secs. 328, 329, 350; *White v. Corlies,* 46 N. Y. 467; *Trevor v. Wood,* 36 N. Y. 307; 93 Am. Dec. 514.)  The signed blank having been filled out by defendant's agent in a manner not authorized by the plaintiff, whose consent to the alteration was never obtained, it was not binding on the plaintiff. (Civ. Code, sec. 1700; Bishop on Contracts, sec. 755; *Wheelock v. Freeman,* 13 Pick. 165; 23 Am. Dec. 674; *Stoddard v. Penniman,* 108 Mass. 366; 11 Am. Rep. 363; *Schwalm v. McIntyre,* 17 Wis. 232; *Smith v. Mace,* 44 N. H. 553; *Fay v. Smith,* 1 Allen, 477; 79 Am. Dec. 752; *Washington Sav. Bank v. Ecky,* 51 Mo. 272.) The company was bound by the acts and representations of its agent. (*Southern Life Ins. Co. v. McCain,* 96 U. S. 84; Civ. Code, sec. 2319, subd. 2; *Union Pac. R. R. Co. v. Durant,* 3 Dill. 343; *Henderson v. Railroad Co.,* 17 Tex. 560; 67 Am. Dec. 675; *Fort Wayne Turnpike Co. v. Deam,* 10 Ind. 563; Boone on Corporations, sec. 79; Sedgwick on Damages, 755; 8 Am. & Eng. Ency. of Law, 642; *Wolfe v. Pugh,* 101 Ind. 293; *Law v. Grant,* 37 Wis. 548; *Jeffrey v. Bigelow,* 13 Wend. 518; 28 Am. Dec. 476; *White v. Sawyer,* 16 Gray, 586; *Sandford v. Handy,* 23 Wend. 260.)

Page, McCutchen & Eells, for Respondent.

The failure of the wife to surrender her interest in the policy is fatal to plaintiff's action. (*Jurgens v. New York Life Ins. Co.,* 114 Cal. 161; Civ. Code, sec. 1691, subd. 2.)  The policy took effect under the application, however induced. (*Griffith*

v. New York Life Ins. Co., 101 Cal. 627; 40 Am. St. Rep. 96.)
No excuse for nonrescission is alleged, and none can be relied
upon. (Daley v. Russ, 86 Cal. 114.) The express stipulation
in the application precludes recovery; and plaintiff cannot shel-
ter himself under a plea of equitable estoppel by reason of the:
agent's fraud or negligence. (May on Insurance, 3d ed., sec.
137, p. 342; Shawmut etc. Co. v. Stevens, 9 Allen, 332; Chase
v. Hamilton Ins. Co., 20 N. Y. 52; New York Life Ins. Co. v.
Fletcher, 117 U. S. 519; Simons v. New York Life Ins. Co., 38
Hun, 309; Rohrbach v. Germania etc. Co., 62 N. Y. 63; 20 Am.
Rep. 451; Alexander v. Germania etc. Co., 66 N. Y. 467; 23 Am.
Rep. 76.) The fact that the plaintiff signed the application
without reading it is of no avail. (Hawkins v. Hawkins, 50
Cal. 558; Gulliher v. Chicago etc. R. R. Co., 59 Iowa, 416; May
v. Johnson, 3 Ind. 449; Wallace v. Chicago etc. R. R. Co., 67
Iowa, 547; Shawmut Mut. Fire Ins. Co. v. Stevens, supra; New
York Life Ins. Co. v. Fletcher, supra; Simons v. New York Life
Ins. Co., supra.)

BRITT, C.—Action for damages sustained by plaintiff be-
cause of fraud alleged to have been practiced on him by de-
fendant, a life insurance company, through the instrumentality
of one Eaton, its agent, whereby defendant obtained from plain-
tiff his negotiable promissory note for the sum of four hundred
and thirty dollars and fifty cents, ostensibly in payment of the
first annual premium on a policy of insurance to be issued on
his life, which note plaintiff was subsequently compelled to pay
to a third person holding the same. At the trial defendant
moved for judgment of nonsuit on the evidence produced by
plaintiff, and the court granted the motion.

It is not contended in this court by the defendant that the
evidence was insufficient to show fraud in the representations
by which Eaton, the agent, obtained plaintiff's note, but it is
urged that for certain reasons, to be presently noticed, the
plaintiff is in no position to hold defendant responsible on that
account. Among the facts which the evidence tended to estab-
lish were the following: Plaintiff is a farmer by occupation, a
foreigner by birth, unacquainted with the technical terms of
life insurance, and accustomed to rely on other persons for the

conduct of transactions of moment requiring some proficiency in the English language. Eaton visited him at his farm and represented to him in substance that in consideration of his note aforesaid, and his agreement to pay an annual premium of the same amount for the term of fifteen years, the defendant would issue to him its policy on his life in the sum of ten thousand dollars, payable to the beneficiary to be named therein in case of plaintiff's death during said term, and, if he survived said period, then the policy would be paid up, and, if he chose, he "would draw ten thousand dollars." Plaintiff agreed to the terms proposed, and executed the note aforesaid. Eaton produced a blank form of application to the defendant for a policy, and requested plaintiff to sign his name thereto, saying that he, Eaton, would fill the same afterward. Plaintiff complied without reading the paper. Eaton departed with the form thus signed, and subsequently completed it and forwarded it to the company. Among the provisions of such application was one to the effect that the insured reserved the right to change the beneficiary of the insurance at any time; and another was that "no statements, promises, or information made or given by or to the person soliciting this application shall be binding on the company or in any manner affect its rights, unless such statements, promises, or information be reduced to writing and presented to the officers of the company at the home office in this application." As completed by Eaton it called for a policy materially different from that he had described to the plaintiff. The company issued a policy accordingly, whereby it engaged to pay the sum of ten thousand dollars to the wife of plaintiff in case of his death within fifteen years; but the cash surrender value of the policy at the end of that time was therein stated to be three thousand and seventy dollars (together with a "dividend" of undefined amount), instead of ten thousand dollars as orally promised by Eaton, and instead of becoming then a paid-up policy its further continuance was conditioned upon the payment of premium at the rate of three hundred and sixty-seven dollars per year. The policy was sent to plaintiff by mail; he returned it to defendant, accompanied by a letter which he caused to be written stating the particulars wherein the policy differed from the representations of Eaton, and demanding the

return of the note he had given for the first premium; such demand was refused; and plaintiff, after payment of the note, brought this suit.

1. Defendant contends that by signing the blank application and delivering it to Eaton plaintiff made Eaton his agent to complete the same, and thus assented to the terms which Eaton saw fit to insert. We do not understand this to be the law in cases such as the present; the blank form was such as could be intelligently filled only by one possessing some skill in the technology of life insurance; for example, it required an answer to the question whether the insured desired "an accumulation policy with guaranteed cash values as set forth in the policy-form of the company"; plaintiff neither knew nor assumed to know the meaning of these terms; presumptively, Eaton possessed the requisite knowledge, and there is no doubt that the preparing of the application was within the scope of his authority as agent for the company (*Continental Ins. Co. v. Chamberlain*, 132 U. S. 304, 311; *Aetna Ins. Co. v. Olmstead*, 21 Mich. 246; 4 Am. Rep. 483; *Donnelly v. Cedar Rapids Ins. Co.*, 70 Iowa, 693); his act in filling the instrument over the signature of plaintiff was therefore the act of the company, and fraud by him in the performance of that act, to the injury of plaintiff, must be treated as the fraud of the company. This conclusion, which, as will appear, is virtually decisive of the case, is fully supported by the decisions on the subject. (*Wheaton v. North British etc. Ins. Co.*, 76 Cal. 415; 9 Am. St. Rep. 216; *Hingston v. Insurance Co.*, 42 Iowa, 46; *Fitchner v. Fire Assn.*, 103 Iowa, 276, 279; *Swan v. Insurance Co.*, 96 Pa. St. 37; *Dowling v. Insurance Co.*, 168 Pa. St. 234; *Rowley v. Insurance Co.*, 36 N. Y. 550; *O'Brien v. Home Benefit Soc.*, 117 N. Y. 310; *Massachusetts etc. Ins. Co. v. Eshelman*, 30 Ohio St. 647; *Farmers' Ins. Co. v. Williams*, 39 Ohio St. 584; 48 Am. Rep. 474; *Kausal v. Insurance Assn.*, 31 Minn. 17; 47 Am. Rep. 776; *Bowlus v. Insurance Co.*, 133 Ind. 106.)

2. The provision of the application that the company should not be affected by statements or promises made by or to the agent unless the same were reduced to writing and presented in the application can be of no avail to defendant on the facts

which the evidence for plaintiff tended to show. For present purposes it is sufficient to say of such provision that plaintiff had no knowledge of it and did not assent to it; although such knowledge might be imputed to him if his signature to the application had been honestly obtained, yet since the instrument as completed by the agent was fraudulent as to plaintiff, it must follow that defendant can derive no advantage from any stipulation thus fraudulently procured. (*McKay v. New York Life Ins. Co.*, 124 Cal. 270, and cases cited; *Lycoming Ins. Co. v. Woodworth*, 83 Pa. St. 223; 1 Joyce on Insurance, secs. 508, 509.)

3. Defendant seems to place most reliance on the circumstance that the plaintiff's wife, who was named as beneficiary of the insurance, did not join in his offer to surrender the policy. It is claimed that her failure to do so is fatal to plaintiff's action, and that *Jurgens v. New York Life Ins. Co.*, 114 Cal. 161, settles the question in defendant's favor. The ground taken in that case was that since the beneficiary—there, as here, the wife of the plaintiff in the action—had a vested interest in the policy, the husband could not, without her concurrence, rescind the contract evidenced by that instrument. The case before us differs from that in some essential particulars. The wife of La Marche never acquired an interest in the policy defendant issued to her husband. Aside from any consideration of fraud in the procurement of the application, it seems to us doubtful whether, in view of the provision that the right to change the beneficiary of the insurance at any time was reserved to La Marche, the beneficiary first named could be said to have a vested interest in the policy in any sense that would prevent her husband from disposing of it as he pleased. (See *Splawn v. Chew*, 60 Tex. 532; *Block v. Valley Mut. Ins. Assn.*, 52 Ark. 201; 20 Am. St. Rep. 167; 2 Joyce on Insurance, sec. 730.) We do not, however, venture an opinion on that question, for this case is for other reasons without the rule held in *Jurgens v. New York Life Ins. Co.*, supra. There the court said: "The policy issued to him [Jurgens] was precisely such a policy as he had applied for in writing"; and the opinion of the court was influenced throughout by the fact that Jurgens really assented to the contract which he subsequently assailed, although his as-

sent was induced by fraudulent representations of the company's agent concerning its meaning; necessarily, in that view, the contract was good until rescinded. (Civ. Code, sec. 1566.) But here, when the blank form left the hand of La Marche it was not an application for a policy; it was meaningless until completed by Eaton, and the only ground on which La Marche can be said to be bound by it is that by delivering the paper with his signature attached he constituted Eaton his agent to fill the blanks, and so became responsible for what the latter did in that behalf. (Bishop on Contracts, sec. 1174, and cases cited; *Loan etc. Co. v. Brown*, 50 Mo. App. 461.) It has been held that if the party so made the agent of the other fills the blank with terms different from those which have been orally agreed upon he exceeds his implied authority, and the instrument is not the contract of the party who has signed it (*Rounsavell v. Pease*, 45 Wis. 506; *Green v. Sneed*, 101 Ala. 205, 46 Am. St. Rep. 119); however this may be in general, it is plain that the rule to which we have adverted—that one who has signed a contract in blank and delivered it to the other contracting party thereby makes the latter an agent to fill the blanks—has no effect in the case at bar; for, as shown above, the agent of an insurance company who thus deals with the blank application of a customer for a policy acts yet as the agent of the company, not of the applicant, and can have no authority from the latter to insert in the form any proposal different from the oral agreement. We may also observe that upon the facts appearing La Marche is not chargeable with negligence in failing to read the application either before or after Eaton filled the blanks. (*Fitchner v. Fire Assn., supra; Germania Ins. Co. v. Lunkenheimer*, 127 Ind. 536; 1 Joyce on Insurance, secs. 489, 490. See *Maxson v. Llewellyn*, 122 Cal. 195; *McKay v. New York Life Ins. Co., supra*.)

It follows that plaintiff never applied for the policy which defendant assumed to issue, and, of course, his wife could have no vested or other interest in a policy which he did not accept nor agree to accept. It was error to grant the nonsuit, and the judgment and order denying a new trial should be reversed.

Gray, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order denying a new trial are reversed.

Harrison, J., Garoutte, J., Van Dyke, J.

Hearing in Bank denied.