581

INTER–OCEAN CASUALTY CO. v.
PRESLAR.
No. 9963.

Circuit Court of Appeals, Ninth Circuit.
April 25, 1942.

Rehearing Denied May 28, 1942.

Hoge, Pelton & Gunther, of San Francisco, Cal. (A. Dal. Thomson, of San Francisco, Cal., of counsel), for appellant.

S. T. Hogevoll and William A. Lahanier both of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

Appellee recovered on an accident insurance policy issued to him by appellant. Appellant, by this appeal seeks to set aside the judgment.

Appellee testified that one Coleman had talked to him several times concerning accident insurance, and that on January 9, 1939, he paid Coleman $5.10 for the first month's premium on a policy; that Coleman then gave him a receipt like the one hereafter mentioned; that he signed an application, and Coleman told him that he was then insured.

On January 31, 1939, the State of California issued to Coleman an agent's license, wherein it was recited that Coleman had been appointed by appellant as its agent. On February 1, 1939, Coleman made written application to appellant for an "agency". On February 6, 1939, appellant and Coleman entered into a written contract, by terms of which Coleman was appointed an agent of appellant. Article I(c) of the agreement provided that Coleman should "not accept risks, make, alter or discharge contracts for insurance, waive forfeitures or otherwise do anything in violation of the powers conferred by the Company's Manual. * * *" The latter document contains the following: "* * * No agent has authority to (a) bind the Company to the acceptance of any risk * * * (c) waive any condition or change, in any manner, any application, policy, rider, endorsement or provision. * * *"

The application of appellee bears a date of February 9, 1939. Appellee testified that he did not sign an application at that time; that he paid Coleman $5.00 on that date; that Coleman then tore the previous receipt and gave appellee a new one for $10.10 which was like the first receipt given him except for the date and amount.

The receipt was signed by Coleman and stated: "Received of Roy Preslar an application for a Policy in the Inter-Ocean Casualty Company, and the sum of Ten and 10/100 Dollars ($10.10) being payment in advance on the policy so applied for. I agree to submit said application to the Company, and should the Company decline to issue the policy applied for within twenty days from the date of this receipt, I guarantee to refund the above amount to the applicant." There was testimony that appellant did not receive the application until February 20, 1939. Appellee testified, however that previous to that date Coleman had told him that he had the policy but had neglected to deliver it.

The application contains the following question: " * * * do you agree * * * that this insurance shall not be binding upon the Company until the delivery of the policy to you while you are in good health and free from all injuries?" The answer contained in the application was "yes".

About 11 p.m. on February 20, 1939, appellee was accidentally injured and was taken to a hospital. He testified that on the following morning Coleman came to see him, bringing appellee's wife, and the policy. The policy was dated at San Francisco, California on the "21st day of February, 1939". The numbers "21" were typewritten over a place which had been erased. The policy provided that appellant thereby insured appellee from 12 o'clock noon "of the day this contract is dated" subject to other provisions of the policy. Section 10(c) of the policy also provided that the "policy takes effect upon payment of agreed premium and delivery to the insured while in good health and free from all injury". The policy also contained the provisions that the policy contained "the entire contract of insurance"; that no "agent has authority to change this policy or to waive any of its provisions"; and that no "change in this policy shall be valid unless approved by an executive officer of the Company and such approval must be endorsed hereon".

Appellee signed a preliminary notice of accident on March 11, 1939. On March 14, 1939, one Benerd, an executive officer of appellant, and Coleman, drove to appellee's house. Benerd remained in the car, and Coleman went in to see appellee. Appellee testified that Coleman brought to him a check for $100 and said that appellee would get one like it each month under the policy; that he (appellee) agreed to pay some advance premiums, and Coleman left the house and later returned with a receipt for $25.50 for the premiums to September 1, 1939, and a check, the total of the two amounts represented by the receipt and the check being $100, the amount specified in the policy. It is significant that the check delivered to appellee was not introduced in evidence. A blank check, testified to as being like the form actually delivered, was introduced. On the face of the check is a blank for the "Policy No." On the back of the check is the following statement, ostensibly assented to by appellee upon his endorsement of the check: "Received above balance being in full satisfaction, compromise and final settlement of all claims accrued or to accrue against Inter-Ocean Casualty Co., Cincinnati, Ohio, on account of any accident already sustained and any disease and any illness heretofore contracted".

Appellant denied further liability and appellee sought recovery from appellant of $5,594. The court below found that the policy in question became effective on February 9, 1939, and rendered judgment for appellee from which this appeal was taken.

Appellant contends that Coleman did not have power to make the insurance effective as of February 9, 1939, that the policy by its terms did not become effective until February 21, 1939; and that there was no proof of the terms of an oral contract of insurance.

■■ The provision regarding the effective date of the policy is one which appellant could waive. Berliner v. Travelers' Ins. Co., 121 Cal. 451, 453, 53 P. 922. Coleman waived the provision by his statement that appellee was insured which statement was made, according to appellee's testimony which was believed by the trial court, prior to the accident. The policy was therefore effective at a time earlier than the accident, if Coleman had authority to waive the provision, or if he did not have such authority and appellant ratified Coleman's act at a subsequent time. Thus the question is simply one of evidence, that is, whether the trial court's finding is clearly erroneous.

■ Since there is no evidence showing authority in Coleman to waive the provision we must examine the evidence as to ratification. Appellee contends that the

payment to him by check for $100 constituted ratification of Coleman's act, and we believe that contention to be correct for two reasons. The first is that if appellant's contention that the policy did not become effective until February 21, 1939, is correct, it had no liability for the accident of any kind, and, therefore, there would be no occasion for paying appellee any sum. By paying the $100, appellant must have considered the policy to have been in force prior to the accident. The endorsement on the back of the check lends support to that theory.

The second reason is that if the policy did not become effective except according to its stated terms, it obviously did not become effective on February 21, 1939, because it provided that it would take effect upon "delivery to the insured while in good health and free from all injury". Appellee, who was confined to a hospital on February 21, 1939, was not "free from injury". Furthermore, in view of the trial court's findings regarding the duration of appellee's injury, such findings, not being challenged here, it is apparent that appellee was not free from injury until a time subsequent to September 1, 1939, yet premiums on the policy were paid and accepted by appellant on March 14, 1939, for the period to September 1, 1939. Such premiums have been retained by appellant at all times.

For these reasons we think the trial court's finding that the policy became effective on February 9, 1939, is not clearly erroneous.

Affirmed.